AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of New York

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Mar 17 - 2025
John M. Domurad, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) Case No. 8:25-MJ-69 (GLF) |
| Jose, RODRIGUEZ Barajas | ) |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of March 14, 2025, in the county of Franklin in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | The Defendant, knowingly and in reckless disregard of the fact that aliens have come to, entered, or remained in the United States in violation of law, did transport, move and attempt to transport and move, such aliens within the United States by means of transportation or otherwise in furtherance of such violation of law. |

This criminal complaint is based on these facts:

☒  Continued on the attached sheet.

*D. Matthews*                3/17/2025 - 8:20 AM
_____
*Complainant's signature*
U.S. Border Patrol Agent Dustin M. Matthews
_____
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: MARCH 17, 2025

*Gary L. Favro* (signed)
_____
*Judge's signature*

City and State:  Plattsburgh, New York          Hon. Gary L. Favro, U.S. Magistrate Judge
_____
*Printed name and title*

*Continuation Sheet, United States v.* **Jose RODRIGUEZ Barajas.**

This criminal complaint is based on the following facts:

On March 13, 2025, at approximately 11:00 PM, Border Patrol Agents assigned to the Burke Border Patrol Station were monitoring vehicle traffic via electronic surveillance equipment on a Border Patrol service issued laptop and identified a Massachusetts rental vehicle entering their area of responsibility. The vehicle travelled westbound on US-11 until it turned right onto New York State Route 122 and then north onto New York State Route 37. Then vehicle was then detected travelling back south on New York State Route 37 approximately twenty minutes later. Agents, in anticipation that the vehicle was now taking its initial travel route back eastbound, positioned their service vehicles along its likely route of travel to illuminate the vehicle as it passed by their location. The vehicle passed by one agent positioned near the intersection of New York State Route 122 and US-11. The agent could clearly see the driver and a passenger, however the headlights on his service vehicle were unable to penetrate the tinted back windows. The agent did notice that the front seat passenger was attempting to conceal their face with a hat. As the vehicle turned left onto US-11, another agent positioned just up the road was able to see through the rear windows of the vehicle as it passed by due to the service vehicle's LED headlights. The agent could clearly see two individuals ducking down in the backseat of the vehicle in attempt to conceal themselves.

As soon as the vehicle passed the second agent, the vehicle immediately accelerated at a high rate of speed in excess of 80 miles per hour, far exceeding the posted speed limit of 55 miles per hour. This was an immediate red flag to agents, and they all pulled out behind the vehicle. It took agents roughly five miles to catch up to the vehicle even through agents were travelling more than 80 MPH. As agents finally caught up with the vehicle, it abruptly slowed to or near the posted speed limit of 55 MPH as it approached the town of Chateaugay, New York.

On March 14, 2025, at approximately 12:18 AM, based on the suspicious behavior of the vehicle's occupants, the route of travel and short turnaround time, the erratic driving, agents activated their emergency lights and sirens and executed a vehicle stop in the village of Chateaugay, New York.

Agents approached the vehicle, which could now be identified as a white 2024 Dodge Hornet ("Hornet") bearing Massachusetts license plates 4JFY93, from both the driver and passenger side of the vehicle. Agents identified themselves as United States Border Patrol agents and began questioning the occupants in the vehicle. The two individuals in the backseat were now sitting fully upright. Agents saw that the individuals in the front passenger seat and the backseat appeared were soaking wet up to their knees, and all three passengers had removed their shoes, indicators that the individuals had walked through the snow. Agents saw that the rear seat passenger had several visible scratches and cuts on his hands. Based on the experience of the agents, the soaking wet clothes, the scratches and cuts are all indicative of someone that had just crossed through the dense briar patches around Fort Covington and Westville, New York.

When asked, the driver, later identified with initials J.R.B, stated that he was in the vacationing in the area and trying to find some snow. Agents then inquired about the other individuals in the car, and J.R.B. claimed he saw them walking and offered them a ride. J.R.B had no luggage in the car, based on the agent's observations he had stayed in the area for about 20 minutes and left. Agents asked J.R.B where he was born and he responded "here, in Mexico". Agents informed J.R.B he was in the United States, not Mexico and he replied, "oh, I know". J.R.B. denied receiving any money from the individuals for the ride. Agents then detained J.R.B in the backseat of marked Border Patrol service vehicle so agents could speak to the passengers in the Hornet.

All three passengers (later identified with initials: R.L.L, A.G.C and J.A.T.) claimed to be citizens and nationals of Mexico and to have crossed the border illegally earlier in the night. None of the three passengers

*Continuation Sheet, United States v.* **Jose RODRIGUEZ Barajas.**

were in possession of any documentation that would allow them to enter, pass through, or remain in the United States legally.

At this time, all individuals were placed under arrest and transported to the Burke Border Patrol Station for further interviews, processing and record checks.

At the station, biographical information and fingerprints were entered into Department of Homeland Security databases for all nine subjects. Record checks confirmed information previously gathered roadside.

At the station, J.A.T was read his Miranda rights and agreed to answer questions without a lawyer present. J.A.T. stated that he crossed from Canada to the United States and knew that it was illegal. J.A.T said that he was supposed to pay 5,000 dollars but did not have to pay until he arrived at his destination. J.A.T stated that he contacted an organizer via "WhatsApp" on his cell phone. J.A.T. stated he did not have direct communication with the driver until he entered the car. Upon entering the Hornet, the driver stated he was going to drive J.A.T and the other passengers. J.A.T stated that the driver looked "weirded out" when Border Patrol was driving behind them.

At the station, A.G.C. was read his Miranda rights and agreed to answer questions without a lawyer present. A.G.C. said that he knew that he crossed illegally into the United States from Canada. A.G.C. said that he was supposed to pay 3,000 dollars but had not paid anyone yet.